UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 7 |
| ADAM R. ORLANDO | ) ) ) | Case No. 17-41616-CJP |
| Debtor | ) ) |  |

**MEMORANDUM OF DECISION REGARDING
UNITED STATES TRUSTEE'S MOTION TO DISMISS**

      The United States Trustee, William K. Harrington (the "U.S. Trustee"), moves (i) to dismiss the chapter 7 case of the debtor, Adam R. Orlando (the "Debtor"), because his case is presumed to be an abuse of the provisions of chapter 7 pursuant to 11 U.S.C. § 707(b)(1) and (2)(A)(i)[1] and (ii) to extend the time to object to discharge pursuant to § 727 and file a motion to dismiss pursuant to § 707(b)(1) and (3) (the "Motion"). The Debtor objects to dismissal of his case, contending that his student loan obligations are special circumstances that rebut the presumption of abuse and, alternatively, that his debts are not primarily consumer debts such that the U.S. Trustee cannot seek dismissal under § 707(b) in any event. The U.S. Trustee responds that, among other things, the Debtor is judicially estopped from asserting that his debts are not primarily consumer debts. Upon consideration of the Motion, opposition thereto filed by the Debtor, further briefing submitted by the parties, and the entire record of this case, including that neither party requested an evidentiary hearing, for the reasons discussed below, the Motion is allowed.

---

[1] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

1

I.  Background

The Debtor filed his chapter 7 petition on September 5, 2017. He stated under the pains and penalties of perjury that his debts were primarily consumer debts in response to both Part 6, Question 16, of his petition and Part 3, Question 6, of his statement of financial affairs. According to the Debtor's summary of schedules, his liabilities include $25,046.00 in secured debt, $6,026.00 in priority debt, and $170,262.00 in unsecured debt, of which $123,547.00 is attributed to student loans. On Schedule I, the Debtor listed a $1,096.00 monthly expense for "Student Loan." Schedule E reflects the following student loan debt: $37,092.00 owed to "Aes/nct," $23,899.00 owed to "Fed Loan Serv," and $62,556.00 owed to "Wells Fargo." On his statement of financial affairs, the Debtor stated that in the 90 days before he filed for bankruptcy, "ACS" and "Fed Loan Serv" received payments of $600 or more, as the former was paid $1,062.00 and the latter was paid $882.00.

The U.S. Trustee filed his Motion on November 20, 2017.[2] On December 22, 2017, the Debtor filed an objection (the "Objection") to the Motion. The day before the Court held its January 10, 2018 hearing on the Motion (the "Hearing"), the Debtor filed a motion to amend his statement of current monthly income, Official Form 122A-1, and means test, Official Form 122A-2 (hereinafter, the "Means Test"), which the Court allowed. The Debtor's amended Official Forms 122A-1 and -2 reflect that (1) the Debtor removed an $836.00 alimony and maintenance payment in Part 1, Question 3, of his statement of current monthly income and, as to his means test calculation: (2) reduced his vehicle operation expenses from $500.00 to

---

[2] Approximately one week after the Motion was filed, the Debtor filed an amended petition in which he again stated that his debts were primarily consumer debts. The amended petition appears to be identical to the original as filed except the date is different and the Debtor's last name now spelled with an uppercase "o."

2

$250.00 in Part 2, Item 12; (3) removed a $324.68 net ownership or lease expense for a second vehicle in Part 2, Item 13f; (4) removed a $1,096.00 deduction for student loan payments in Part 2, Item 33d; and (5) added a $1,090.00 expense adjustment for student loans as special circumstances in Part 4, Item 43.

At the Hearing, the parties agreed that, although the Motion was based on the calculations contained in the Debtor's original means test, the amended Means Test was now the operative document and that the presumption of abuse still arose. While certain concerns raised in the U.S. Trustee's Motion were resolved by the Debtor removing the $836.00 alimony and maintenance payment and reducing his vehicle operation expense to $250.00 in the amended Means Test, the parties disputed whether student loan payments constituted special circumstances that would rebut the presumption of abuse. In an order that entered after the Hearing (the "Order"), the Court required the Debtor to file an affidavit and brief in support of his assertion that his student loan payments were special circumstances and gave the U.S. Trustee an opportunity to respond.

The Debtor filed his brief and affidavit in accordance with the Order. One week later, he filed a motion to amend his petition to reflect that his debts were not primarily consumer debts, which motion remains pending. The U.S. Trustee filed a responsive brief. Neither party has requested an evidentiary hearing regarding the Motion. As a result, the Court concludes that the matter is ripe for determination on the existing record.

II. <u>Discussion</u>

   A. <u>Is the Debtor Judicially Estopped from Asserting that His Debts Are Not "Primarily Consumer Debts"?</u>

In his brief, the Debtor asserts for the first time that the Motion should be denied because § 707(b) does not apply in that his debts, which include $6,026.00 in tax obligations and $123,547.00 in student debts, are not primarily consumer debts. The U.S. Trustee contends that

3

the Debtor is judicially estopped from changing his position at this juncture in the proceedings; the Court agrees.

Judicial estoppel is an equitable doctrine. *See, e.g., Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010). "It operates to prevent a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding." *Id.* (internal citations omitted). "There are two generally agreed-upon conditions for the application of judicial estoppel." *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2012). First, the positions taken by the litigant "'must be directly inconsistent, that is, mutually exclusive. Second, the responsible party must have succeeded in persuading a court to accept its prior position.'" *Id.* (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30 (1st Cir. 2004)). Finally,

> There is also a third oft-considered factor that asks whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. We generally have not required a showing of unfair advantage. Where unfair advantage exists, however, it is a powerful factor in favor of applying the doctrine.

*Id.* at 16-17 (internal quotations and citations omitted). Because judicial estoppel "protect[s] the integrity of the judicial process[, i]t is typically invoked when a litigant tries to play fast and loose with the courts." *Perry*, 629 F.3d at 8 (internal citations omitted).

Regarding the Court's acceptance of the litigant's prior position, the First Circuit has explained that

> "Acceptance" in this context is a term of art. In order to satisfy this prerequisite, a party need not show that the earlier representation led to a favorable ruling on the merits of the proceeding in which it was made, but must show that the court adopted and relied on the represented position either in a preliminary matter or as part of a final disposition.
>
> The showing of judicial acceptance must be a strong one. The need for a strong showing derives from the maxim that "[j]udicial estoppel is applied with caution to

4

> avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." It follows that a proponent of judicial estoppel must affirmatively show, by competent evidence or inescapable inference, that the prior court adopted or relied upon the previous inconsistent assertion.

*Perry*, 629 F.3d at 11-12 (internal citations omitted). While bankruptcy courts have determined that a debtor is judicially estopped from changing a prior position after the debtor is granted a discharge, *see, e.g., Guay*, 677 F.3d at 18 (stating that "[a] bankruptcy court 'accepts' a position in the form of omissions from bankruptcy schedules when it grants the debtor relief, such as discharge, on the basis of those filings"); *Blanchette v. Blanchette (In re Blanchette)*, 582 B.R. 819, 825 (Bankr. D. Mass. 2018) (concluding that judicial estoppel applied in part because court relied on debtor's prior position in debtor's schedules when it confirmed debtor's plan and granted a discharge); *DiVittorio v. HSBC Bank, USA, N.A. (In re DiVittorio)*, 430 B.R. 26, 48 (Bankr. D. Mass. 2010) (stating that confirmation of debtor's plan was not acceptance of representations made in debtor's schedules under doctrine of judicial estoppel in same way that granting debtor relief in the form of discharge may be, as debtor could still amend schedules and plan), a court can be deemed to have accepted a debtor's prior position under other circumstances as well, including when a debtor takes an inconsistent position as to the nature of his debts after a motion to dismiss is filed by the U.S. Trustee, *see In re Jones*, 556 B.R. 327, 335 (Bankr. E.D. Mich. 2016).

The bankruptcy court in *Jones* held that a chapter 7 debtor was judicially estopped from claiming that her student loans were nonconsumer debts because the circumstances "present[ed] a classic fact sequence for application of judicial estoppel." *Id.* When the debtor in *Jones* filed her chapter 7 petition, she indicated under the pains and penalties of perjury that her debts were primarily consumer debts. After the U.S. Trustee filed a motion to dismiss her chapter 7 case for

5

abuse under § 707(b)(3), the debtor amended her petition and means test to assert that her debts were not primarily consumer debts. The debtor changed positions because the majority of her debts were student loans, which she asserted were not consumer debts because she incurred them in an attempt to increase her income.

The bankruptcy court held that the debtor was judicially estopped from changing positions because the court and the U.S. Trustee had "relied upon Debtor's original position in this regard." *Id.* The court noted that there was no mistake, inadvertence or other explanation for the debtor's shifting positions, "the timing of which exhibits the 'gamesmanship' prohibited under the equitable doctrine of judicial estoppel." *Id.* Because the debtor was bound by her original position that her debts were primarily consumer debts for purposes of § 707(b), the court did not need to consider whether the debtor's student loans were primarily consumer debts by analyzing their primary purpose and could act on the U.S. Trustee's motion to dismiss on the merits of whether dismissal was appropriate under subsection (b)(3). *Id.* at 334-35; *cf. In re McDowell*, No. 12-31231, 2013 WL 587312, *1 (Bankr. S.D. Tex. Feb. 14, 2013) (debtors judicially estopped from changing position to assert that debts were not primarily consumer debts when court relied on prior characterization in allowing U.S. Trustee's motion to dismiss).

Similarly, in this case the Debtor is judicially estopped from asserting that his debts are not primarily consumer debts. As in *Jones,* the Debtor took the position that his debts were primarily consumer debts when he filed his chapter 7 petition and Statement of Financial Affairs. Based on these representations and given that § 707(b) applies only if a debtor's debts are primarily consumer debts, the U.S. Trustee filed the Motion. After the Motion was filed, the Debtor continued to take the position that his debts were primarily consumer debts, as reflected in the amended petition he filed approximately one week after the Motion was filed and the

6

Objection filed to the Motion. He also did not raise any issue as to the reclassification of his debts at the Hearing. The first time the Debtor asserted that his debts were not primarily consumer debts was in the brief he filed in response to the Order. Shortly thereafter, the Debtor filed the still-pending motion to amend his petition to reflect that his debts were not primarily consumer debts.

The Debtor's post-Order position that his debts are not primarily consumer debts is clearly inconsistent with his prior assertions that those debts were primarily consumer debts and is prohibited under the equitable doctrine of judicial estoppel. The Court relied on the Debtor's prior position when it considered the positions of the parties at the Hearing and ordered further briefing on the discrete issue of special circumstances under § 707(b). It was only in the context of the Debtor's further briefing that he raised the issue of the nature of his student loan obligations and, given the timing, the Court concludes that the debtor's shifting positions suggests a late strategy change instead of a mistake or inadvertence. If the Court allowed the Debtor to now take a new position that his debts are not primarily consumer debts, the efforts and time spent by the Court and the U.S. Trustee over the past months in considering whether the Debtor's case presents a presumed abuse under § 707(b) would have been wasted. Under the facts and circumstances of this case, the Court accepted the Debtor's original position. As such, the Debtor is judicially estopped from now asserting that his debts are not primarily consumer debts.

    B.    <u>Do Special Circumstances Exist Rebutting the Presumption of Abuse?</u>

        i.  <u>Position of the Parties</u>

The Debtor admits that the presumption of abuse arises in his chapter 7 case, but asserts that such presumption is rebutted by the $1,090.00 payment he makes each month toward his

student loans, which he contends are special circumstances under § 707(b)(2)(B). The Debtor states that he is not asking the Court to adopt a *per se* rule that, because student loan obligations are nondischargeable, student loan payments must always constitute special circumstances under § 707(b)(2). Rather, the fact that his student loan payment obligations will survive any chapter 7 discharge appears to be merely one factor the Debtor asserts that the Court should consider.[3]

The Debtor offers little detail about how his specific situation warrants a finding of special circumstances, stating in his Opposition that he

> is proceeding in good faith and does not have a present ability to repay any [of] his unsecured non-dischargeable debt. The Debtor worked hard prior to filing for bankruptcy to mitigate and attempt to repay his debt by attempting debt settlement and student loan assistance companies. Despite his efforts a reasonable and affordable payment was not available. Only after his attempts to resolve his debt failed did he seek relief in bankruptcy.

Opp'n at 1. According to the Debtor, "he was unable to keep up with the payments and live at a reasonable minimal standard of living." Br. ¶ 6. He asserts that his student loan payments are special circumstances because they are "unavoidable" and "the Debtor would not have any ability to pay any debt if made to do so," Br. ¶¶ 30, 34, because he has "a negative disposable income." Br. ¶ 28. The Debtor asserts that his financial situation would worsen and his "fresh start" would be "infringe[d]" if his student loan payments are not determined to be special circumstances and he could not continue with his chapter 7 case. Br. ¶ 26.

The Debtor urges the Court not to apply a "higher standard" for special circumstances in its review as set forth in *In re Pageau*, 383 B.R. 221 (Bankr. D.N.H. 2008), but contends that, even under such a standard, the Court can find that there are special circumstances here because

---

[3] The Debtor states his position as "[t]he Debtor here is not asking the Court to establish a per-se rule that 'non-discharge' [sic] debt is a 'special circumstance.' Rather that the Debtor's requirement to make payments on a debt that will continue beyond this bankruptcy and was unavoidable in this case is a 'special circumstance.'" Br. ¶ 42.

8

"the Debtor would have been unable to find work because of lack [of] training and education." Br. ¶ 41. The Debtor also seeks to distinguish a presumably "honest and unfortunate" debtor who has "unavoidable" nondischargeable student loans from a debtor who can avoid incurring nondischargeable debt arising from "fraud, embezzlement [or] DUI" by following the law. Br. ¶ 42. Finally, the Debtor distinguishes *Pageau* by noting that the *Pageau* court included in its "special circumstances" analysis consideration of how student loans would be treated in a chapter 13 case in that court's District, where "student loans may be paid directly and separately during a debtor's chapter 13 plan in accordance with § 1322(b)(5) as long as payments are to maintain and keep current long-term student loan debt, i.e., loans that mature after plan completion, with no acceleration of that debt," 383 B.R. at 229 (citing *In re Chandler*, 210 B.R. 898, 904 (Bankr. D.N.H. 1997), contrasted with this District's practice of treating student loans as general unsecured debts to be paid under the plan.[4]

     The Debtor attaches two exhibits to the brief: (i) a copy of his credit report, which "evidences the monthly student loan amounts and payments," and (ii) his affidavit. Br. ¶¶ 45-46. He does not otherwise reference these exhibits or discuss how they are relevant to his alleged special circumstances. Nevertheless, the Court notes the following facts included in the Debtor's affidavit: (1) The Debtor used student loans to fund his education at Buffalo State College during the 2006—2007 school year and at UMass Amherst during the following three school years (2007—2010), after which he graduated with a B.A. in Biology (Aff. ¶¶ 2–3); (2) According to the Debtor's records, he currently owes $123,547.00 on his student loans, with a monthly payment of $1,273.00 (Aff. ¶ 8); (3) Before filing his chapter 7 bankruptcy petition, the Debtor

---

[4] The *Pageau* court "acknowledge[d] that this may not be the rule in other jurisdictions" and referenced cases where courts from other districts would not confirm a chapter 13 plan that unfairly discriminated by providing a student loan creditor with a higher dividend than that received by other general unsecured creditors. 383 B.R. at 229.

9

attempted to manage his debts by hiring loan consolidation companies to deal with his unsecured debt, by "making payments on [his] student loans to ACS and Fed Loan Service," by making "every effort" to pay his debts in general, and by reducing his expenses "by having [his] brother pay [his] auto lease[,]" after which his "brother used the car" (Aff. ¶¶ 11–14); (4) At some point the Debtor "consolidated [his] loans to find a more affordable payment" (Aff. ¶ 10); and (5) "Despite [his] best efforts, [the Debtor] was unable to maintain a reasonable minimal standard of living and continue payments on [his] unsecured debt and student loans" (Aff. ¶ 15). In his brief, the Debtor states that after graduating from college, he found full-time employment in the automobile industry, which statement is supported by representations made in the Debtor's Statement of Financial Affairs. The credit report submitted by the Debtor indicates that he is obligated on educational debt owed to "Wells Fargo," "Aes/nct," and "Fed Loan Serv," with monthly payments of $625, $354, and $294, respectively. The credit report lists the status of the Wells Fargo educational debt as "Account Closed By Grantor," however, while the status of each of the remaining two educations debts is stated as "Open, Current Account."

    The U.S. Trustee asserts that the Debtor has failed to meet his burden in establishing special circumstances and, thus, the Debtor's case should be dismissed. He notes that, while many courts have refused to establish a *per se* rule that student loan payments constitute special circumstances simply because the debts are nondischargeable, other courts have considered "the underlying reasons which give rise to and justify the additional expenses or adjustments to a debtor's income" and urges the Court to adopt such an approach. Tr. Br. at 7. According to the U.S. Trustee, although the Debtor may have student loan debt, the Debtor has not adequately explained the special circumstances underlying this debt to rebut the presumption of abuse under

10

§ 707(b). Thus, "[i]n essence, the Debtor relies solely on the non-dischargeable nature of the debt." *Id.* at 8.

      ii. <u>The Presumption of Abuse and Special Circumstances under § 707(b)</u>

Section 707(b)(1) provides that the Court "may dismiss" or, with the debtor's consent, convert to chapter 11 or 13, an individual chapter 7 debtor's case if the individual's "debts are primarily consumer debts, . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." § 707(b)(1). "In order to ensure that debtors repay creditors the maximum they can afford, the BAPCPA established a mathematical formula, known as a means test, by which some Chapter 7 cases are deemed presumptively abusive."[5] *In re Rudler*, 576 F.3d 37, 40 (1st Cir. 2009) (internal quotations omitted). Only debtors whose monthly income exceeds the state median for their household size are subject to means testing. 11 U.S.C. § 707(b)(7).

"Means testing requires application of a mathematical formula that calculates the debtor's average monthly disposable income, over a sixty-month period, by deducting statutorily prescribed expenses from current monthly income." *Rudler*, 576 F.3d at 40 (citing 11 U.S.C. § 702(b)(2)(A)(ii)-(iv)). Specifically, a presumption of abuse arises under § 707(b)(2) "when a debtor's monthly disposable income multiplied over 60 months exceeds the lesser of (a) '25 percent of the debtor's nonpriority unsecured claims in the case, or [$7,700], whichever is greater;' or (b) '[$12,850].'" *Haskins*, No. 15-40736, 2015 WL 7283059, at *3 (citing § 707(b)(2)). If the average monthly disposable income figure exceeds a threshold statutory amount—in this case, $214.17 per month—the bankruptcy case is presumptively abusive. 11 U.S.C. § 707(b)(2)(A)(i). The presumption "may only be rebutted by demonstrating special

---

[5] "'Abuse may be established by application of a mathematical test set forth in § 707(b)(2) or a subjective test under § 707(b)(3).'" *In re Haskins*, No. 15-40736, 2015 WL 7283059, at *1, 3 (Bankr. D. Mass. 2015) (quoting *In re Bianco*, No. 11-41733, 2012 WL 3763682, at *2 (Bankr. D. Mass. Aug. 29, 2012)). Only the objective test set forth under § 707(b)(2) is applicable in the present matter.

11

circumstances, . . . to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." *Id*. at § 707(b)(2)(B)(i). The statute offers examples of special circumstances, "such as a serious medical condition or a call or order to active duty in the Armed Forces." *Id.*

There are certain procedural requirements for establishing special circumstances. *Pageau*, 383 B.R. at 225 (referencing § 707(b)(2)(B)(ii), (iii), and (iv)). A debtor is required

> (1) to "itemize" each additional expense or income adjustment by setting forth the nature of the suggested adjustment, its amount, and its impact on the debtor's finances and the means test calculation; (2) to provide "documentation" of the additional expense or income adjustment; (3) to provide a "detailed explanation" of the "special circumstances" that make the additional expense or income adjustment "necessary and reasonable;" and (4) to "attest under oath" to the accuracy of the information the debtor provides.

*Pageau*, 383 B.R. at 225. The "debtor bears the burden of proof under both the procedural and substantive factors[.]" *In re Martin*, 505 B.R. 517, 521 (Bankr. S.D. Iowa 2014).

"Courts are split on whether student loans payments constitute 'special circumstances'" under § 707(b), *In re Brown*, 500 B.R. 255, 261 (Bankr. S.D. Ga. 2013), and there is no controlling authority on this issue in the First Circuit. Some courts have determined that student loan payments are by their nature *per se* "special circumstances." Courts making this determination focus on the fact that "student loans are non-dischargeable so a debtor has no realistic option other than to pay the student loans during the bankruptcy." *Brown*, 500 B.R. at 262; *see also In re Harmon*, 466 B.R. 721, 729 (Bankr. E.D. Pa. 2011). There is some concern about adopting such a rule, however, as "then many categories of [nondischargeable] debts, including frauds, willful and malicious injuries, drunk driving liabilities and even taxes would gain priority status not granted in § 507(a)." *In re Siler*, 426 B.R. 167, 175 (Bankr. W.D.N.C. 2010).

Other courts have not adopted a *per se* rule and instead have focused on the circumstances of a particular case. In doing so, those courts look to "the future and assess the likely consequences for the debtor if the student loan payment is not treated as a 'special circumstance.'" *Harmon*, 466 B.R. at 729. One court adopting this forward-looking approach declined to find that a debtor's student loan was a special circumstance because she did not offer anything "to suggest that the continuing obligation owing on the student loan debt would render the fresh start unachievable" and did not explain how the debt "would have grave consequences going forward." *DeAngelis v. Womer (In re Womer)*, 427 B.R. 334, 336 (Bankr. M.D. Pa. 2010). Another court similarly considered "the potential return a debtor's unsecured creditors might receive in a hypothetical Chapter 13 plan" and determined that the debtor's student loans did not constitute a special circumstance, partly because "Chapter 13 repayment [was] a reasonable alternative." *In re Carillo*, 421 B.R. 540, 545 (Bankr. D. Az. 2009); *but see In re Bradley*, No. 13-01390, 2013 WL 4663125, at *4 (Bankr. S.D. Ala. Aug. 30, 2012) (student loan payment was considered a special circumstance when debtors lived modestly, had no meaningful ability to pay their debts, and "a chapter 13 case would force [them] to incur even more nondischargeable student loan debt"); *In re Howell*, 477 B.R. 314, 317 (Bankr. W.D.N.Y. 2012) (noting that "after completing any likely plan under Chapter 13, the debtors would owe more on their student loans than if they had continued to make their regular contractual payments during the same period of time"). Some courts refuse to consider the treatment of student loan debt under a hypothetical chapter 13 plan, however, because it would be "inconsistent with the statutory mandate that the chapter 7 means test is based upon a snapshot of a debtor's financial circumstances on the petition date." *See Pageau*, 383 B.R. at 230.

A number of courts have held that student loan payments generally do not constitute special circumstances because "they are not unforeseeable, unavoidable, or beyond a debtor's control." *Brown*, 500 B.R. at 261; *see also In re Maura*, 491 B.R. 493, 511 (Bankr. E.D. Mich. 2013). Comparing student loan payments to the statutory examples of a serious medical condition or active duty in the Armed Forces led one court to conclude that student loan payments constitute special circumstances only when they have been incurred under "circumstances beyond a debtor's control or at least extraordinary or exceptional for which there is no reasonable alternative." *Brown*, 500 B.R. at 262; *see also In re Fudge*, No. 15-51518, 2016 WL 285449, *2 (Bankr. E.D. Mich. Jan. 22, 2016) ("the critical inquiry is whether an event outside of the debtor's control necessitated the decision to incur the loans in the first place").

Such an approach is consistent with that taken in *Pageau*, where the court looked to the examples of special circumstances found in § 707(b)(2)(B)(i) and observed that they "do not identify expenses, but rather identify some circumstances that give rise to such expenses." 383 B.R. at 228. The court determined that

> It is not the obligation to repay a loan itself that qualifies such an expenses as a special circumstance[,] . . . but rather it is the circumstances that lead to incurring a loan that must be special and justify the inclusion of this additional expense item in the means test, as long as the debtor has no reasonable alternative but to make monthly payments on such loan.

*Id.*

Courts following *Pageau* "examine the motivation and reasons the debtor acquired the student loan." *Brown*, 500 B.R. at 262; *Harmon*, 466 B.R. at 729. "Educational loans incurred in pursuit of education and training that is necessitated by permanent injury, disability or an employer closing might constitute special circumstances because such events are outside the control of a debtor as are the two examples in the statute." *Pageau*, 383 B.R. at 228. But

14

"[p]ayments on student loans, business loans or equipment loans, incurred solely to secure a more advantageous income or to enter a different vocation, are not special circumstances." *Id.* Under this approach, "student loans . . . incurred in the ordinary pursuit of a career. . . . are not unique and they do not enjoy statutory priority over other creditor claims. They will rarely, if ever, qualify as special circumstances." *Siler*, 426 B.R. at 175; *see also Carillo*, 421 B.R. at 544 ("These courts focus on the reasons the debtor incurred the debt, noting that there is rarely anything special about the incurrence of student loans, which have become ubiquitous."); *cf. Martin*, 505 B.R. at 521-22 ("The language of section 707(b)(2)(B) neither suggests nor requires that a claim of special circumstances must be involuntary in nature or outside a debtor's control. Where the circumstances are not involuntary, the 'special circumstances' . . . must be highly unusual, and of the type not normally encountered by most debtors.") (internal citations omitted).

### iii. Do Student Loans Constitute Special Circumstances In This Case?

Upon consideration of the different approaches, the Court declines to adopt a *per se* rule that student loan obligations are by their nature "special circumstances," because what should be an exception to the normal expense calculation in the means test would arguably swallow the entire rule in many student loan cases. While the Debtor did not argue for the adoption of a *per se* rule, the debtor asserted that the facts and circumstances of his case demonstrated "special circumstances" under any applicable test. It is not necessary for the Court to adopt any specific approach regarding the issue, because the Debtor has failed to meet his burden under any of the suggested tests. Although the Debtor has asserted through his schedules, statements, and affidavit that he had a monthly expense of at least $1,090 for nondischargeable student loan payments that constitutes "special circumstances" which would rebut the presumption that his chapter 7 case must be dismissed for abuse under § 707(b)(1) and (2) if he does not elect to

convert his case to a case under either chapter 11 or chapter 13, the Debtor has failed to meet his burden as set forth below.

First, the Debtor has not sufficiently "itemized" each additional expense or income adjustment by setting forth the nature of the suggested adjustment, its amount, and its impact on the debtor's finances and the means test calculation. The Debtor lists a $1,096.00 monthly student loan expense on Schedule I, references a $1,090.00 expense on his Means Test, and states in his affidavit that "according to his records the monthly payment on his student loans is $1,273." The Debtor appears to have derived the $1,273 total from the credit report attached to his brief, which includes what appears to be educational debt owed to "Wells Fargo," "Aes/nct," and "Fed Loan Serv." However, it is unclear whether the Debtor was or is making payments to Wells Fargo, because he stated in his affidavit that he was only "making payments on [his] student loans to ACS and Fed Loan Service" and the credit report lists the status of the Wells Fargo educational debt as "Account Closed By Grantor." Furthermore, the Debtor indicates in his statement of financial affairs that in the 90 days before he filed for bankruptcy, he made payments of $600 or more to "ACS" and "Fed Loan Serv," but apparently not to Wells Fargo.

Even if the Debtor had provided sufficient evidence establishing the exact amount of a monthly student loan expense for which he had no reasonable alternative but to pay, he has not demonstrated special circumstances justifying the expense. The Debtor offers little information about how and why he incurred his student loans, explaining simply that they were used to fund his four-year education, which began at Buffalo State College and then concluded at UMass Amherst after the Debtor transferred. The Debtor graduated with a B.A. in Biology, but then found work in automotive industry. Although the Debtor did not specify what work the Debtor does within the automotive industry in his Objection or brief, Schedule I reflects he is a "BMW

16

Trainer." The Court cannot conclude on these limited facts that the Debtor incurred his student loan debt under circumstances that were unforeseeable, unavoidable, beyond his control, extraordinary, exceptional, and/or highly unusual. *See Martin*, 505 B.R. at 521; *Brown*, 500 B.R. at 261–62. The Debtor has not established that it was necessary for the Debtor to have incurred this debt; rather, he appears have chosen to pursue a college education "to secure a more advantageous income" and career. *See Pageau*, 383 B.R. at 228. As it turns out, he established a career in an industry seemingly unrelated to his biology degree, which does not provide sufficient income to meet all of his obligations at this time. *See Womer*, 427 B.R. at 336 (debtors did not meet burden in establishing that student loan payment was a special circumstance when the record "simply refers to the obligation and the general difficulties the Debtors have meeting their expenses").

Finally, even if the Court were to adopt an approach that would permit it to look at the debtor's future circumstances, the Court cannot determine on this record that the Debtor's continuing student loan obligations would "render the fresh start unachievable," *Womer*, 427 B.R. at 336, because the Debtor has not provided adequate evidence as to whether he has exhausted all reasonable alternatives to making that monthly payment, whether in the form of deferment, forbearance, or an income-driven repayment plan. *Cf. Howell*, 477 B.R. at 316–17 (noting that debtors swore in affidavits that they were "not eligible for any further extension"). The Debtor merely states that he engaged loan consolidation companies, made payments on his student loans, and consolidated his loans. He does not demonstrate why other alternatives are not applicable, such as partial deferral of student loan payments during the period of a chapter 13 plan or another restructuring arrangement.

17

III.   Conclusion

While the Court is sympathetic to the financial difficulties faced by debtors who have accumulated substantial student loan debt and the burdens imposed on debtors by the treatment of student loans under the Bankruptcy Code, this Court will not adopt a *per se* rule that student loan obligations are "special circumstances" allowing debtors with significant student loan payments to otherwise rebut a presumption of abuse under the means test.  A student loan could very well constitute a "special circumstance" in a different case, but, based on the record here, the Court cannot conclude that the Debtor has met his burden to rebut the presumption of abuse.  For the reasons discussed above, the Court shall enter an order granting the Motion and providing that the Debtor's case will be dismissed unless the Debtor consents to conversion on or before August 13, 2018.


Dated: July 30, 2018                                By the Court,

                                                    _____
                                                    Christopher J. Panos
                                                    United States Bankruptcy Judge